IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| HERBERT L. SIDBURY, #347175, | * |
| Petitioner, | * |
| v. | * Civil Action No. JKB-14-1975 |
| FRANK B. BISHOP, | * |
| and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * |
| Respondents. | * |
| | *** |

## **MEMORANDUM OPINION**

Petitioner Herbert L. Sidbury ("Sidbury") seeks habeas corpus relief pursuant to 28 U.S.C. § 2254, attacking the constitutionality of his 2007 convictions in the Circuit Court for Prince George's County. (ECF No. 1.) Respondents were directed to file an answer to the Petition and have done so. (ECF No. 7.) Sidbury filed a reply. (ECF No. 9.) This matter has been fully briefed. Upon review, the Court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2014); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (Petitioner not entitled to hearing under 28 U.S.C. § 2254(e)(2)). For reasons that follow, Sidbury's Petition for writ of habeas corpus IS DENIED AND DISMISSED WITH PREJUDICE.

### **Background and Procedural History**

On February 8, 2007, Sidbury was indicted by a Grand Jury in Prince George's County and charged with murder (Count 1), use of a handgun in commission of a felony (Count 2), and possession of a regulated firearm after conviction of a crime of violence (Count 3). (Resp. Ex. 1

1

at 3.)[1] After a jury trial, Sidbury was convicted on July 25, 2007, of first degree murder and use of a handgun in commission of a felony. (*Id.* at 6; ECF No. 1 at 2; ECF No. 1-1 at 1.) He was acquitted by the court on the third count, possession of a regulated firearm after conviction of a crime of violence. (Resp. Ex. 1 at 6.) On October 19, 2007, Sidbury was sentenced to life in prison without the possibility of parole for the first ten years on Count 1 and a concurrent term of twenty years imprisonment without the possibility of parole for five years on Count 2.[2] (*Id.* at 7; ECF No. 1 at 1; ECF No. 1-1 at 1-2.) Sidbury filed a Notice of Appeal on October 22, 2007, and, in an unreported opinion filed on May 26, 2009, the Court of Special Appeals of Maryland affirmed Sidbury's judgments of conviction. (Resp. Ex. 1 at 7; Resp. Ex. 8; ECF No. 1 at 2-3.) Sidbury then filed a petition for a writ of *certiorari* in the Court of Appeals of Maryland, which affirmed the Court of Special Appeals's decision in a reported opinion issued on May 12, 2010. (ECF No. 1 at 3; Resp. Ex. 11.) Sidbury did not seek further review by the United States Supreme Court. (ECF No. 1 at 3.)

On July 14, 2010, Sidbury filed a *pro se* petition for post-conviction review in the Circuit Court for Prince George's County, followed by an amended petition and a counseled supplemental petition. (Resp. Ex. 1 at 9-10; ECF No. 1 at 3.) A hearing on the petition was held on August 14, 2012. (Resp. Ex. 1 at 11; ECF No. 1-1 at 2.) On November 5, 2012, the circuit court granted Sidbury's post-conviction application to the extent that he was allowed to file a

---

[1] Respondents filed a Notice of Filing of Lengthy Exhibits (ECF No. 7-1) with their Answer, and the exhibits were filed in paper format. Citations to Respondents' Exhibits are to the page numbers therein. All other citations reflect the pagination of the electronic docket.

[2] In addition, Sidbury's Motion for New Trial, which he had filed on July 30, 2007, was denied. (Resp. Ex. 1 at 6-7).

belated motion for modification of sentence and denied the petition in all other respects.[3] (Resp. Ex. 1 at 11; ECF No. 1 at 4; ECF No. 1-1 at 3, 5.) Sidbury filed an application for leave to appeal the adverse decision to the Court of Special Appeals (Resp. Ex. 12), which denied the application on November 14, 2013 (Resp. Ex. 1 at 11; Resp. Ex. 13). The intermediate appellate court's Mandate issued on December 16, 2013. (Resp. Ex. 1 at 11.)

Sidbury filed his federal Petition on June 6, 2014,[4] alleging ineffective assistance of counsel. (ECF No. 1.) On September 5, 2014, Respondents filed their Answer. (ECF No. 7.) Sidbury's Reply was received by the Court on October 6, 2014.[5] (ECF No. 9.)

**Standard of Review**

Section 2254 states that a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

I. **Threshold Considerations**

A. **Exhaustion**

The exhaustion doctrine, codified at 28 U.S.C. § 2254(b)(1),[6] "is principally designed to

---

[3] Sidbury did, in fact, file a belated motion for modification or reconsideration of sentence, which was denied on December 7, 2012. (Resp. Ex. 1 at 11.)

[4] The Petition is dated June 6, 2014, and is deemed filed on that date. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

[5] Sidbury's Reply is undated.

[6] Section 2254(b)(1) states that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
> (A) The applicant has exhausted the remedies available in the courts of the State; or
> (B) (i) there is an absence of available State corrective process; or

protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts [are] equally bound to guard and protect rights secured by the Constitution." *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (alteration in original) (internal citations and quotation marks omitted). Moreover, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation ...." *Id.* Thus, the *Rose* Court cautioned litigants, "before you bring any claims to federal court, be sure that you first have taken each one to state court." *Id.* at 520; *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) ("Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court.").

### B. Procedural Default

In *O'Sullivan*, the Supreme Court stated: "To ... 'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts." 526 U.S. at 848 (internal citation omitted); *see also id.* at 844 ("Section 2254(c) requires only that state prisoners give the state courts a *fair* opportunity to act on their claims."). The inquiry, then, is "[w]hether a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort has *properly* presented his claims to the state courts. ... Because we answer this question 'no,' we conclude that [petitioner] has

---

        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
    (C) An applicant shall not be deemed to have exhausted the remedies available in the courts of the state, within the meaning of this section, if he has the right under the law of the state to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1).

4

procedurally defaulted his claims." *Id.* at 848. Stated differently, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. The *O'Sullivan* Court noted, however,

> In this regard, we note that nothing in our decision today requires the exhaustion of any specific state remedy when a State has provided that that remedy is unavailable. Section 2254(c), in fact, directs federal courts to consider whether a habeas petitioner has "the right *under the law of the State to raise, by any available procedure*, the question presented" (emphasis added). The exhaustion doctrine, in other words, turns on an inquiry into what procedures are "available" under state law. In sum, there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available.

*Id.* at 847-48; *see also Breard v. Pruettt*, 134 F.3d 615, 619 (1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 375 n.1 (1991)) ("A procedural default also occurs when a habeas petitioner fails to exhaust available State remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'").[7]

When a claim is procedurally defaulted, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that failure to consider the claim on the merits would result in a fundamental miscarriage of justice, i.e., the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S 478, 495-96 (1986). "Cause" consists of "some factor external to the defense [that] impeded counsel's efforts to raise the claim in State court at the appropriate time." *Breard,* 134 F.3d 615, 620 (4th Cir. 1998). In

---

[7] A procedural default may also occur when a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent State procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999); *see also Breard*, 134 F.3d at 619.

5

order to demonstrate prejudice, a habeas petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Carrier*, 477 U.S. at 494 (quoting *Frady*). Even when a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995).

### C. Strickland

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Representation is deficient if it falls below an objective standard of reasonableness, considering all the circumstances. *Id.* at 688.

To satisfy the first part of this standard, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687. The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 669. A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. *See* 28 U.S.C. § 2254(d)(1). A petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). "There is a

strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington v. Richter*, 562 U.S. 86, 109 (2011) (citations and internal quotation marks omitted); *see also Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) ("Counsel is not required to engage in the filing of futile motions."). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

The second prong requires the court to consider whether counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable and that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 690-94. "The benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id*. at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *See id.* at 697.

The principles governing ineffectiveness claims apply in federal collateral proceedings as they do on direct appeal or in a motion for new trial. *Id.* at 697. Indeed, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. *Id.*

7

## II. Analysis Framework

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is "contrary to" clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application analysis," a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough. v Alvarado*, 541 U.S. 652, 664 (2004)). In other words, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

Under section 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.*

Further, "a determination of a factual issue made by a State court shall be presumed to be

8

correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe*, 593 F.3d at 378. This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

## Discussion

Sidbury alleges that he received ineffective assistance of counsel due to trial counsel's failure to (1) seek a judgment of acquittal on the charge of first degree murder and use of a handgun in the commission of a felony on the grounds of inconsistent verdicts and double jeopardy and (2) object to the court's instruction to the jury on use of a handgun in the commission of a felony after granting defendant's motion for judgment of acquittal as to possession of a regulated firearm, also on double jeopardy grounds. (ECF No. 1 at 6-8.) Sidbury claims that the post-conviction court erred in its denial of post-conviction relief on the basis that he had "failed to meet the burden of proof required to demonstrate that he was rendered ineffective assistance of counsel." (*Id.* at 7.) Respondents counter that Sidbury's "convictions for first degree murder and use of a handgun in the commission of a felony were neither legally inconsistent nor precluded under the Double Jeopardy clause." (ECF No. 7 at 17.) Any objections on those grounds, therefore, would have been meritless. (*Id.* at 18.) Respondents conclude that "[t]he state post conviction court's determination that Sidbury's trial counsel was not defective as alleged was a reasonable application of *Strickland* that survives scrutiny under 28 U.S.C. § 2254(d)." (*Id.*)

9

Trial counsel moved for a judgment of acquittal on the first degree murder charge based on lack of premeditation. (ECF No. 1 at 6.) However, Sidbury states, counsel's focus on the lack of premeditation was not sound trial strategy. (*Id.*; *see also* ECF No. 9 at 4.) Sidbury contends that "[a]t no point during the motion for judgement of acquittal did trial counsel argue that the conviction of the defendant on the count of first degree murder ... would require the jury to convict the defendant on the count of use of a handgun in the commission of a felony as it is a necessary element d[ue] to the nature and cause of death" (ECF No. 1 at 6), and that to find him guilty of use of a handgun in the commission of a felony would violate the Fifth and Sixth Amendments to the U.S. Constitution and Maryland common law double jeopardy principles, (*id.*). Counsel's failure to make that argument, according to Sidbury, prejudiced him by allowing him to be convicted of first degree murder and use of a handgun in the commission of a felony, thereby placing him "twice in jeopardy," and failing to preserve the issue for appellate review. (*Id.* at 7.)

Sidbury also contends that the court's instruction to the jury regarding use of a handgun in the commission of a felony "highlighted inadmissible evidence." (*Id.* at 8.) According to Sidbury, "the trial court read to the jury an instruction pertaining to a previous[] issue that had been resolved in petitioner's favor." (*Id.* at 9.) Had counsel objected, the court would have been made aware of its "error," and counsel could have requested a curative instruction to the jury that "any evidence of a handgun in this case [was] inadmissible. This would have resulted in the verdict of not guilty of 1st degree murder due to a lack of evidence or at worst preserved the issue for appellate review." (*Id.*)

Sidbury raised similar claims in his application for post-conviction relief in the circuit court:

10

> Petitioner alleges, in sum, that his conviction for murder and use of a handgun in the commission of a felony violated both the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution and Maryland Common Law Double Jeopardy Principles. Furthermore, Petitioner alleges that the verdict[s] of guilty as to the first degree murder and use of a handgun in commission of a felony were inconsistent with the court's acquittal as to possession of a regulated firearm. In addition, Petitioner alleges that his trial and conviction for murder were tainted, thereby depriving Petitioner of a fair trial. Finally, Petitioner alleges ineffective assistance of both trial and appellate counsel.

(ECF No. 1-1 at 1.) The post-conviction court found that Sidbury's substantive allegations had been waived, as they were not raised at the proper time. (*Id.* at 4.) The court, however, addressed Sidbury's ineffective assistance claims on the merits. (*Id.*)

> The post-conviction court first stated:
>
> Petitioner alleges ineffective assistance of counsel of both trial and appellate counsel as guaranteed by the Sixth Amendment of the U.S. Constitution and Article 21 of the Maryland Declaration of Rights. To support an argument for ineffective assistance of counsel, a convicted defendant has the burden of meeting the two prong test found in *Strickland v. Washington*. *Strickland* requires the following:
>
>> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable."
>
> 466 U.S. 668, 688 (1984).

(*Id.* at 3-4) (alteration in original). The court continued:

> The allegations of ineffective assistance of counsel set forth in Petitioner's Petition for Post-Conviction ... Relief and Supplemental Petition are without merit as Petitioner has failed to offer proof that but for his trial and appellate counsels' failure to challenge the trial court's jury instruction, trial counsels' failure to seek

11

> a judgment of acquittal of the murder charge[8] and both trial and appellate counsels' failure to object to the murder verdict and use of a handgun in the commission of a felony verdict, his sentence would have been reduced or he would have been acquitted. Furthermore, Petitioner has not overcome the strong presumption, established in *Strickland*, that both trial and appellate counsel acted within the wide range of reasonable professional assistance when they did not challenge the trial court's jury instruction, when trial counsel did not seek a judgment of acquittal on the murder charge and when both trial and appellate counsel did not object to the murder verdict and use of a handgun in the commission of a felony verdict. *Strickland*, 466 U.S. at 694-695.

(*Id.* at 4.) Further,

> Petitioner failed to demonstrate how trial and appellate counsels' failure to challenge the trial court's jury instruction, trial counsel's failure to seek a judgment of acquittal on the murder charge and both trial and appellate counsels' failure to object to the murder verdict and use of a handgun in the commission of a felony verdict resulted in his being unduly prejudiced. ....

(*Id.*) The court found that "Petitioner did not suffer a prejudicial effect, such that it triggered the need to afford Petitioner a new trial. Furthermore, this Court finds that Petitioner failed to meet the burden of proof required to demonstrate that he was rendered ineffective assistance of counsel." (*Id.* at 5.)

The post-conviction court properly and reasonably applied "clearly established Federal law, as determined by the Supreme Court of the United States ...," 28 U.S.C. § 2254(d)(1), specifically *Strickland*. Moreover, there would have been no basis for either counsel to have raised the motions or objections Sidbury alleges they should have made, as those motions or objections would have been meritless. *See Sharpe*, 593 F.3d at 383 (quoting *Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005) ("Counsel is not required to engage in the filing of futile motions.").

---

[8] As noted above, trial counsel did move for judgment of acquittal on the first degree murder charge (Resp. Ex. 3 at 2-99), although not on the basis Sidbury claims he should have argued. (ECF No. 1 at 6-7.)

Sidbury's first argument can be summarized as follows: "to find petitioner guilty of first degree murder requires that [he] be found guilty of the use of a handgun in the commission of a felony, which requires that petitioner first possess the handgun." (ECF No. 9 at 4.) Because he was acquitted of the "lesser included offense" of possession of a regulated firearm, there was no evidence that he possessed any type of firearm to use, and, therefore, the State could not prove that he fired the firearm used to murder the victim. (*Id.*) Sidbury's reasoning is flawed.

Where one charge contains different legal elements from the elements of another charge, there is no lesser included offense involved. *See McNeal v. Maryland*, 44 A.3d 982, 992-93 (Md. 2012) ("The charge of possession of a handgun contains legal elements that are distinct from the elements in a wearing, carrying, or transporting a handgun charge. There is no lesser included offense or predicate crime involved in McNeal's inconsistent verdicts."); *see also Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("Each of the offenses created requires proof of a different element. The applicable rule is that, where the same act or transaction constitutes a violation of two statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."). As Respondents point out, the crimes of which Sidbury was charged have different elements.[9] (ECF No. 7 at 17.)

---

[9] If the issues in this case required solely interpreting state law, which is best left to the Maryland state courts, *see Oken v. Nuth*, 64 F. Supp. 2d 488, 500 (D. Md. 1999) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)) ("It is not the province of a federal habeas court to reexamine state court determinations on state-law questions."), the claims would not provide a cognizable basis for federal habeas relief, *see* 28 U.S.C. § 2254(a) (stating that federal courts and judges "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); *Estelle*, 502 U.S. at 69 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). However, Sidbury alleges double jeopardy violations, *see* Petition at 6, 8, which, if true, would clearly violate the U.S. Constitution, *see* U.S. Const. amend. V (providing, in relevant part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"). Therefore, the Court addresses these claims in the context of Sidbury's allegations of ineffective assistance of counsel.

A murder is a murder in the first degree if it is (1) a deliberate, premeditated, and willful killing; (2) committed by lying in wait; (3) committed by poison; or (4) committed in the perpetration of or attempt to perpetrate a number of enumerated offenses. Md. Code Ann., Crim. Law Art., § 2-201. Use of a firearm is not an element of first degree murder. *See id.*

"A person may not use a firearm in the commission of a crime of violence, as defined in § 5-101 of the Public Safety Article,[10] or any felony, whether the firearm is operable or inoperable at the time of the crime." Md. Code Ann., Crim. Law Art., § 4-204(b). Further,

(a)(1) In this section, "firearm" means:

(i) a weapon that expels, is designed to expel, or may readily be converted to expel a projectile by the action of an explosive; or
(ii) the frame or receiver of such a weapon.

(2) "Firearm" includes an antique firearm, handgun, rifle, shotgun, short-barreled rifle, short-barreled shotgun, starter gun, or any other firearm, whether loaded or unloaded.

*Id.* § 204(a). The Criminal Law Article defines a "handgun" as "a pistol, revolver or other firearm capable of being concealed on the person." *Id.* § 201(c)(1). The definition of handgun under this Article also includes a short-barreled shotgun or short-barreled rifle, *id.* § 201(c)(2), but not a shotgun, rifle, or antique firearm, *id.* § 201(c)(3).

Finally, a person who has been convicted of a disqualifying crime, *inter alia*, "may not possess a regulated firearm[.]" Md. Code Ann., Pub. Safety Art., § 5-133(b). Under the Public Safety Article, a "regulated firearm" is defined as:

(1) a handgun; or

---

[10] A "crime of violence" includes murder in the first degree. *See* Md. Code Ann., Pub. Safety Art., § 5-101(c)(11).

14

>   (2) a firearm that is any of the following specific assault weapons or their copies, regardless of which company produced and manufactured that assault weapon:
>
>   ....

*Id.* § 5-101(r). A "handgun" is defined under the Public Safety Article as "a firearm with a barrel less than 16 inches in length." *Id.* § 5-101(n)(1). The definition of "handgun" also includes "signal, starter, and blank pistols." *Id.* § 5-101(n)(2).

It is clear that each of the foregoing statutes has different elements. For example, first degree murder does not require that the crime be committed by means of a firearm, much less a handgun with a barrel less than sixteen inches in length. In addition, use of a firearm in the commission of a crime of violence or other felony does not require that the gun be a "regulated firearm." Nor does it require that the user be a disqualified individual. On the other hand, the prohibition on possession of a regulated firearm by a disqualified person does not require that the firearm in question be used during the commission of a violent crime or other felony. Therefore, Sidbury's contention that "possession of a regulated firearm" by a disqualified person is a "lesser included offense" of "use of a handgun in the commission of a felony" is incorrect.

Moreover, the definition of "handgun" under the Public Safety Article differs from the definition of "handgun" under the Criminal Law Article. *Compare* Md. Code Ann., § 5-101(n)(1) *with* Md. Code Ann., Crim. Law Art., § 201(a)(1). The basis for defense counsel's motion for judgment of acquittal on Count Three, possession of a regulated firearm, was that there was no proof that the handgun had a barrel of less than sixteen inches in length. (Resp. Ex. 3 at 2-97.) After acknowledging that counsel had stipulated to the requisite convictions under § 5-133(b)(1) (*id.* at 2-98), the trial judge stated:

> For the purpose of this statute a handgun means a firearm ... with a barrel less than 16 inches in length. It would have been so easy to ask either of the witnesses who saw, who have testified they saw the defendant with a handgun how long was the gun. That wasn't done. I can't guess, and therefore the motion for judgment of acquittal as to count three, possession of a regulated firearm -- regulated firearm is granted. ...

(*Id.* at 2-99.) Sidbury's acquittal on Count Three based on the lack of evidence as to the length of the handgun had no effect whatsoever on Counts One and Two, first degree murder and use of a handgun in the commission of a crime of violence, respectively. Therefore, the verdicts were not inconsistent, and Sidbury's convictions did not violate the Double Jeopardy Clause.

There was no basis for counsel to have moved for a judgment of acquittal on Count One. Nor was there any basis for counsel to have objected to Sidbury's convictions on Counts One and Two on grounds of inconsistent verdicts or double jeopardy. Therefore, counsel cannot be found to have been ineffective for failing to make any motions or raise any objections on those grounds. *See Sharpe*, 593 F.3d at 383. Sidbury's claims of ineffective assistance of counsel based on counsel's failure to so move or object are without merit, as the circuit court found. (ECF No. 1-1 at 4.)

The same is true for Sidbury's second contention, that trial counsel was deficient for failing to object to the trial judge's instructions to the jury regarding use of a handgun in the commission of a felony after granting the defense's motion for judgment of acquittal for possession of a regulated firearm. (ECF No. 1 at 8.) Sidbury claims that these instructions "highlighted inadmissible evidence" (*id.*), because, after his acquittal on Count Three, "any evidence of a handgun ... [was] inadmissible" (*id.* at 9). Again Sidbury's basic premise is flawed, as seen above.

The trial court instructed the jury regarding Count Two as follows:

> The defendant is charged with the crime of use of a handgun in the commission of a felony. The felonies in this case are first or second degree murder.
> In order to convict the defendant, the state must prove that the defendant committed either of the felonies, first or second degree murder, and that the defendant used a handgun in the commission of the felony.
> A handgun is a pistol, revolver or other firearm capable of being concealed on or about the person and which is designed to fire a bullet by the explosion of gunpowder.

(Resp. Ex. 3 at 2-133.) Immediately after giving the above instruction, the trial judge asked if any counsel wished to approach the bench. (*Id.*) None did. (*Id.*) The court then proceeded to hear closing arguments. (*Id.*)

The term "regulated firearm" was not used. There was no mention of the definition of a handgun under the Public Safety Article or of a handgun with a barrel of less than sixteen inches. There was no reference to a disqualified person. In short, the foregoing instruction had no connection to the crime of possession of a regulated firearm by an individual disqualified from doing so, of which Sidbury was acquitted in Count Three. Counsel had no basis for objecting to the jury instruction on double jeopardy grounds and, accordingly, was not ineffective for failing to object to the trial court's instructions to the jury. *See Sharpe*, 593 F.3d at 383.

Based on the foregoing, it is clear that Sidbury has not shown that counsel's performance was deficient or that he was prejudiced in any way. Therefore, the post-conviction court's conclusion that Sidbury did not meet his burden of demonstrating that he received ineffective assistance of counsel was sound. The circuit court's application of *Strickland* was neither incorrect nor unreasonable. 28 U.S.C. § 2254(d); *see also* ECF No. 9 at 3. Moreover, Sidbury has not made a reasonable argument that counsel failed to satisfy *Strickland's* deferential standard. *See Harrington*, 562 U.S. at 105. On the contrary, his arguments in this Court are as

17

lacking in merit as they were in the circuit court. The Court, therefore, rejects Sidbury's ineffective assistance of counsel claims.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this burden, an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Sidbury has failed to make a substantial showing that he was denied a constitutional right, and the court finds that reasonable jurists would not find the denial of habeas relief in this case debatable. Accordingly, a certificate of appealability shall not issue.[11]

## CONCLUSION

For the above reasons, the court concludes that Sidbury's Petition provides no grounds for habeas corpus relief. Accordingly, the Petition is DENIED and DISMISSED.

A separate Order follows.

May 9, 2017                                                                 _____/s/_____
Date                                                                                                James K. Bredar
                                                                                                 United States District Judge

---

[11] Denial of a certificate of appealability in the district court does not preclude Sidbury from requesting one from the court of appeals.